# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| BLAKE MANUFACTURING, INC. | Case No. 2:19-cv-13657 |
| Plaintiff, | |
| | U.S. District Judge |
| v. | Victoria A. Roberts |
| TRULIFE, INC. | U.S. Magistrate Judge |
| | David R. Grand |
| Defendant. | |

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
## AND BRIEF IN SUPPORT

TruLife has no viable defense against BMI's claims of patent infringement, and has elected not to participate in this litigation. After TruLife failed to respond to BMI's Complaint, the Clerk of Court entered the default against TruLife on April 29, 2020. Now, pursuant to Federal Rule of Civil Procedure 55(b) and for at least the reasons set forth in the accompanying Brief, the Declaration of A. Justin Poplin, and the Declaration of Mary L. Perez-Price, BMI respectfully moves the Court for a default judgment against TruLife. BMI has not contacted TruLife pursuant to Local Rule 7.1(a) because TruLife has failed to appear.

# TABLE OF CONTENTS

Page

I. Introduction …......………………………………….…….……..4

II. Entry of default against Defendant TruLife is warranted ……….…....…5

    A. The Court has subject matter and personal jurisdiction
    over TruLife …………………………………….…….…....5

    B. Defendant TruLife has been served ……….….….............................6

    C. Defendant TruLife has failed to defend ...……….…...............................6

III. Default judgment against Defendant TruLife is warranted ……….…....7

    A. BMI's allegations are factually and legally sufficient to
    support its claims for patent infringement ……………………….....8

        1. TruLife's unauthorized making, offering to sell,
        selling, and importing of the TruLife Boot directly
        infringes BMI's U.S. Patent No. 6,923,780….……….…..............9

        2. TruLife's unauthorized making, offering to sell,
        selling, and importing of the TruLife Boot directly
        infringes BMI's U.S. Patent No. 7,163,519….……….…..............9

        3. TruLife's patent infringement has been willful ……...............10

IV. Remedies are warranted …………….………………………….....11

    A. Monetary damages …………….…................................11

        1. BMI is entitled to its lost profits …………….…...........................12

        2. BMI is entitled to a reasonable royalty …………….…...............15

        3. Damages should be enhanced for willfulness ……....................17

**B. Injunctive relief** ..……..….…….................................................................18

**C**. **Attorney fees** …...................................................................................19

**D**. **Costs** …...............................................................................................19

**V. Conclusion** …......………………………………………….……………...20

    **A. Damages requested**……….................................................................20

    **B. Injunction requested** .......................................................................20

    **C. Attorney's fees requested** ...............................................................20

    **D**. **Costs requested**……...........................................................................21

## I. INTRODUCTION

Judgement by default against Defendant TruLife, Inc ("TruLife") is warranted because TruLife has been served but has failed to file a compliant answer in this lawsuit. Judgment by default is appropriate because the factual allegations set forth in Plaintiff BMI's Complaint [Doc #1] provide a sufficient factual basis to support BMI's claims of patent infringement such that this Court may draw the reasonable inference that TruLife is liable for such claims and BMI is entitled to relief. *See, e.g., Ford Motor Co. v. Cross,* 441 F.Supp.2d 837, 848 (E.D. Mich. 2006) (all factual allegations in the complaint as to liability are taken as true when a defendant is in default and, if such allegations are sufficient to support a finding of liability, judgment by default should be entered).

An award of costs and reasonable attorney fees is appropriate to compensate BMI for the expense incurred in enforcing its exclusive rights by instituting and pursuing this lawsuit and is justified by the willfulness of TruLife's acts of infringement and its refusal to participate in these proceedings. A permanent injunction restraining TruLife from continuing to commit acts of infringement is warranted and serves the public interest by upholding the federal laws of the United States and preventing continued irreparable harm to BMI, which harm cannot be adequately rectified by monetary damages alone.

## II. ENTRY OF DEFAULT AGAINST DEFENDANT TRULIFE IS WARRANTED

Pursuant to Fed. R. Civ. P. 55(a), default should be entered against Defendant TruLife because TruLife has been served but has failed to defend, and jurisdiction is proper. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995); *Ford Motor*, 441 F.Supp.2d at 845.

### A. The Court has subject matter and personal jurisdiction over TruLife

As alleged in the Complaint, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 because BMI's claims of patent infringement arise under the federal patent laws of the United States (35 U.S.C. §§ 271, 281-285). [Doc #1, ¶ 3].

The Complaint alleges that TruLife is subject to personal jurisdiction in this District and subject to this Court's specific and general jurisdiction, pursuant to due process, on the grounds that it resides in this District and the state of Michigan, has committed acts of patent infringement in this District and the State of Michigan, and regularly conducts and/or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from the sale of goods to persons or entities in this District and the State of Michigan. [Doc #1, ¶ 4]. Accordingly, based upon the factual allegations in the Complaint, the Court's exercise of personal jurisdiction over TruLife in this case is reasonable and comports with traditional notions of fair play and substantial justice. *See Ford Motor*, 441 F.Supp.2d at 845–46; *Audi AG and*

5

*Volkswagen of America, Inc. v. D'Amato*, 341 F.Supp.2d 734, 741–49 (E.D. Mich. Oct. 19, 2004).

For purposes of entering default judgment against TruLife, this Court may accept as true BMI's jurisdictional allegations in the Complaint. *Ford Motor*, 441 F.Supp.2d at 846.

### B. Defendant TruLife has been served

TruLife was served on February 21, 2020 by personal service. [Doc #5].

### C. Defendant TruLife has failed to defend

TruLife sent the Court and BMI a letter dated March 16, 2020 in which TruLife stated that it tried to settle the case, it did not know of the patents, it purchased 3,100 units from another supplier, it still had 666 units in inventory, and it had not sold any units since 2019. The letter does not deny that TruLife has infringed BMI's patents. A copy of the letter (though without its enclosure, which is protected settlement discussion under Rule 408) appears in Exh. A. The letter was sent by TruLife's registered agent on TruLife letterhead and is not a compliant answer. No attorney has made an appearance in this case on behalf of TruLife.[1]

Accordingly, entry of default against TruLife is warranted.

---

[1] In addition, on May 8, 2020 (after the Clerk of Court entered the default), TruLife's registered agent sent the Court and BMI a second letter. A copy (though without its enclosure, which is protected settlement discussion under Rule 408) is provided as Exh. B. The second letter appears to take the position that there is no default since TruLife sent the March 16, 2020 letter. That of course is not the case.

## III.  DEFAULT JUDGMENT AGAINST DEFENDANT TRULIFE IS WARRANTED

Pursuant to Fed. R. Civ. P. 55(b), judgment by default should be entered against TruLife because TruLife has defaulted for failure to plead or otherwise defend. Entry of default establishes TruLife's liability for all claims alleged in the Complaint. *See Antoine*, 66 F.3d at 110. Notice of this Motion is not required because, as alleged in the Complaint [Doc #1, ¶ 2], TruLife is a company, not a natural person, and thus is not an infant, an incompetent person, or in military service. *See Ford Motor*, 441 F.Supp.2d at 854. Indeed, TruLife is a company with over three hundred employees and millions of dollars in revenue per year. *See* Poplin Decl. ¶18, Ex. F. Nevertheless, notice of this Motion is being provided to TruLife by mail to its business address as shown in the certificate of service.

Entry of judgment by default is in the Court's discretion. *Am. Auto. Ass'n v. Dickerson*, 995 F.Supp.2d 753, 756 (E.D. Mich. 2014). For purposes of determining whether judgment by default should be entered, the Court should take all well-pleaded allegations of fact set forth in the Complaint as admitted by TruLife, and should enter judgment against TruLife if those factual allegations are sufficient to support a finding of liability as to BMI's claims of patent infringement. Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also Ford Motor*, 441 F.Supp.2d at 848.

## A. BMI's allegations are factually and legally sufficient to support its claims for patent infringement

As required under Fed. R. Civ. P. 8(a), BMI's claims of patent infringement set forth in the Complaint included sufficient detail to put TruLife on notice of the basis of its infringement claims and to demonstrate that BMI was and is entitled to relief. In particular, the Complaint identifies the accused product (the "TruLife Boot") by name, item number, and picture [Doc #1, ¶ 11, Ex. D]; states that the TruLife Boot is "nearly identical" to the BMI Boot which TruLife purchased from BMI since as early as 2007 and which is protected by U.S. Pat. Nos. 6,923,780 and 7,163,519 [Doc #1, ¶¶ 9, 10, 12, 13]; states that TruLife infringes at least claims 1, 8, and 14 of the '780 Patent literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the TruLife Boot [Doc #1, ¶¶ 12, 17, 18]; and states that TruLife infringes at least claims 1 and 6 of the '519 Patent literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the TruLife Boot [Doc #1, ¶¶ 13, 24, 25]. This was sufficient to put TruLife on fair notice of its patent infringement. *See Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256 (Fed. Cir. 2018).

Direct infringement requires a showing that the defendant, without authority, either (1) makes, uses, offers to sell, or sells a patented invention within the United States, or (2) imports a patented invention into the United States. *See* 35 U.S.C. § 271. To be covered by a patent, an allegedly infringing device must include each element

of at least one patent claim either literally or under the doctrine of equivalents. *See Grober v. Mako Prods.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012). An accused product that does not literally infringe may still infringe under the doctrine of equivalents if the accused product contains an equivalent for each claim limitation not literally satisfied. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997), *citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605 (1950).

### 1. *TruLife's unauthorized making, offering to sell, selling, and importing of the TruLife Boot directly infringes BMI's U.S. Patent No. 6,923,780*

As alleged in the Complaint, TruLife directly infringed, and continues to directly infringe, at least claims 1, 8, and 14 of BMI's U.S. Patent No. 6,923,780 under 35 U.S.C. § 271 by making, using, offering to sell, and selling the TruLife Boot in the United States, and by importing the TruLife Boot into the United States without BMI's license or authorization. [Doc #1, ¶¶ 12, 17, 18].

Accordingly, BMI is entitled to default judgment that TruLife infringed claims 1, 8, and 14 of the '780 Patent.

### 2. *TruLife's unauthorized making, offering to sell, selling, and importing of the TruLife Boot directly infringes BMI's U.S. Patent No. 7,163,519*

As alleged in the Complaint, TruLife directly infringed, and continues to directly infringe, at least claims 1 and 6 of BMI's U.S. Patent No. 7,163,519 under 35 U.S.C. § 271 by making, using, offering to sell, and selling the TruLife Boot in

the United States, and by importing the TruLife Boot into the United States without BMI's license or authorization. [Doc #1, ¶¶ 13, 24, 25].

Accordingly, BMI is entitled to default judgment that TruLife infringed claims 1 and 6 of the '519 Patent.

### 3. TruLife's patent infringement has been willful

As alleged in the Complaint, the TruLife Boot is nearly identical to BMI's patented boot. [Doc #1, ¶¶ 12, 13]. The BMI Boot is shown below on the left, and the TruLife Boot is shown below on the right – the primary visible difference between the two is their color. Upon even a cursory review, TruLife's infringement is glaring. But to put TruLife's infringement in perspective, it is important to understand that TruLife purchased BMI's patented boot from BMI for at least ten years prior to its infringement. [Doc #1, ¶¶ 9, 10]. All the while, the BMI Boot was consistently marked with the '780 and '519 Patent numbers in accordance with the patent marking statue, 35 U.S.C. § 287(a). [Doc #1, ¶ 9]. This flagrant copying is evidence of TruLife's willful, deliberate, and objectively reckless infringement of BMI's patent rights. *See Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S.Ct. 1923 (2016) (evidence accused infringer copied patented invention relevant to determination of willful infringement). And given the circumstances, TruLife has no viable defense to BMI's claims of willfulness.

Accordingly, BMI is entitled to default judgment that TruLife's infringement of the '780 Patent and the '519 Patent is willful.



| BMI Boot | TruLife Boot |
| [Doc #1, ¶ 9, Ex. C] | [Doc #1, ¶ 11, Ex. D] |

## IV.   REMEDIES ARE WARRANTED

BMI requested monetary damages and injunctive relief in its Complaint. [Doc #1, ¶¶ 22, 23, 29, 30, B, C, D, F, G, H, I, J, K, L].

### A. Monetary damages

Upon finding patent infringement, "the court shall award the claimant damages adequate to compensate for the infringement… together with interest and

costs as fixed by the court." 35 U.S.C. § 284. Such adequate compensation consists of the patent owner's lost profits or, at a minimum, a reasonable royalty. *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1157 (6th Cir. 1978). "When the damages are not found by a jury, the court shall assess them." 35 U.S.C. § 284. And whether the damages are found by a jury or assessed by the court, "the court may increase the damages up to three times the amount found or assessed." *Id.* Damages may be trebled under § 284 when the infringement is willful. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 508 (1964).

### 1. BMI is entitled to its lost profits

"Compensatory damages are a staple across most every area of law. And compensatory damages under the patent statute, which calls for damages adequate to compensate the plaintiff for its loss due to the defendant's infringement, should be treated no differently than the compensatory damages in other fields of law." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284 (Fed. Cir. 2017) (internal citations omitted). "When a plaintiff proves it would have been in a certain position but for a defendant's harmful act, it is entitled to damages to put it in the same position it would have occupied had the harmful act never occurred." *Id.* "The 'but for' damages the patentee must establish in patent law, as the Supreme Court explained, are an answer to a simply stated question: '[H]ad the Infringer not

infringed, what would the Patent Holder-Licensee have made?'" *Id.* (citing *Aro Mfg.*, 377 U.S. at 507).

"There is no particular required method to prove but for causation. One 'useful, but non-exclusive' method to establish the patentee's entitlement to lost profits is the Panduit test first articulated by the Sixth Circuit." *Id.* (internal citations omitted). Under the Panduit test, a patentee is entitled to lost profit damages if it can establish:

(1)     demand for the patented product;

(2)     absence of acceptable non-infringing alternatives;

(3)     manufacturing and marketing capability to exploit the demand; and

(4)     the amount of profit it would have made.

*Id.* at 1285.

The first factor (demand for the patented product) "considers demand for the product as a whole," while the second factor (absence of non-infringing alternatives) "considers demand for particular limitations or features of the claimed invention." *Id.* (internal citations omitted). "Products lacking the advantages of the patented invention can hardly be termed a substitute acceptable to the customer who wants those advantages." *Id.* at 1285-1286 (internal citation and punctuation omitted). Said differently, "If purchasers are motivated to purchase because of particular features

available only from the patented product, products without such features – even if otherwise competing in the marketplace – would not be acceptable noninfringing substitutes." *Id.* (internal citation omitted).

Here, there is a high demand for contracture boots as a whole, and over 18,480 of the patented boots have been sold since 2009. *See* Perez-Price Decl. ¶ 4. And the specific patented contracture boots at issue allow the sole to be easily assembled and disassembled without the use of tools. [Doc #1, Ex. A, col. 6, lines 1-18, col. 6, line 56 – col. 7, line 10, col. 8., lines 10-22; Doc #1, Ex. B, col. 6, lines 11-31, col. 6, line 56 – col. 7, line 3]. This is precisely the feature that is advertised and that drives demand of the patented boot. *See* Perez-Price Decl. ¶ 5, Ex. A-C. As such, other products which lack this patented advantage are not acceptable substitutes. *See Mentor Graphics Corp.*, 851 F.3d at 1285-1286. Accordingly, the first two factors of the Panduit test are met.

Turning now to the third Panduit factor, BMI has at all times had the manufacturing and marketing capability to exploit the demand for its patented boot. *See* Perez-Price Decl. ¶ 6.

And finally, had TruLife not sold the infringing TruLife Boot, BMI would have been able to capture those sales to the consumers looking for boots with BMI's patented features. *See* Perez-Price Decl. ¶ 7. BMI would have sold the BMI Boot at the same price point as it had previously been sold. *See* Perez-Price Decl. ¶ 7. Since

there is a long history of sales of the BMI Boot (by TruLife), there is an established price point of $113-120.99. *See* Perez-Price Decl. ¶ 7. At an average price point of $117, BMI would have profited $93 per boot. *See* Perez-Price Decl. ¶ 8.

Since TruLife has admitted to selling 2,434 boots, BMI's lost profits are $226,362 (2,434 boots multiplied by $93 per boot).

### 2. *BMI is entitled to a reasonable royalty*

For the 666 boots that TruLife admits to manufacturing but not selling, BMI is entitled to a reasonable royalty. And, if for any reason the Court fails to award BMI its lost profits on the 2,434 boots that TruLife admits to selling, BMI is entitled to a reasonable royalty on those as well. *See* 35 U.S.C. § 284.

"Litigants routinely adopt several approaches for calculating a reasonable royalty. The first, the analytical method, focuses on the infringer's projections of profit for the infringing product." *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1324 (Fed. Cir. 2009) (internal citation omitted). There, the royalty is determined by subtracting the infringer's usual or acceptable net profit from its anticipated net profit realized from sales of infringing devices. *Id.* Another approach, called the "hypothetical negotiation" or the "willing licensor-willing licensee" approach, attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began. *Id.*

Looking first at the analytical method approach, the BMI Boot typically sells for $113-$120.99. *See* Perez-Price Decl. ¶ 7. And since TruLife bought that boot from BMI for $43, using an average sell price of $117 per boot leaves a profit of $74 per boot – i.e., 63% profit ($74 divided by $117). A standard measure of profit for distributors such as TruLife is 35-40%. *See* Perez-Price Decl. ¶ 9. Thus, under the analytical method approach, 23-28% of the profit – i.e., $26.91-32.76 per boot, averaged to $29.84 per boot – is BMI's measure of damages (35-40% subtracted from 63%, then multiplied by $117). If this were used for the 666 infringing boots, $19,873.44 in damages should be added to BMI's lost profits discussed above (666 units multiplied by $29.84 per unit). If the Court were to use this approach for all 3,100 infringing units, BMI's damages are $92,504 (3,100 units multiplied by $29.84 per unit).

Turning next to the hypothetical negotiation approach, BMI profited $18.66 per boot when TruLife purchased and resold the BMI boot (before TruLife's infringement). *See* Perez-Price Decl. ¶¶ 10-11. As such, BMI would have demanded at least $18.66 per boot in any hypothetical negotiation. If this were used for the 666 infringing boots, $12,427.56 in damages should be added to BMI's lost profits discussed above (666 units multiplied by $18.66 per unit). Or if the Court were to use this approach for all 3,100 infringing units, BMI's damages are $57,846 (3,100 units multiplied by $18.66 per unit).

### *3. Damages should be enhanced for willfulness*

Regardless of how the Court determines damages (e.g., lost profits or reasonable royalty), BMI's damages should be trebled since TruLife's infringement was so blatantly willful as set forth above in Section III.A.3.

The Patent Act gives district courts the discretion to award enhanced damages against those guilty of patent infringement. *Halo Elecs*., 136 S.Ct. at 1935 (citing 35 U.S.C. § 284). And though the award of enhanced damages is to be limited "to egregious cases of misconduct beyond typical infringement," *id.*, "'bad-faith infringement' is an independent basis for enhancing patent damages." *Id.* (citing *Aro Mfg.*, 377 U.S. 476); *see also, FENF, LLC v. Shenzhen FromUFoot US Inc.,* 2018 WL 3729073 at *2 (E.D. Mich., Aug. 6, 2018) ("Manufacturing a virtually identical product, and then advertising that product… constitutes deliberate and willful infringement of Plaintiff's patent rights.").

It is hard to script a case more egregious or bad faith than this. TruLife bought BMI's patented boot from BMI for over a decade – and all the while the boot was marked with the '780 and '519 Patent numbers in accordance with the patent marking statue, 35 U.S.C. § 287(a). [Doc #1, ¶ 9]. With no defense, TruLife stopped purchasing BMI's patented boot and manufactured or commissioned an infringing knock-off to sell instead. Trebled damages are appropriate and respectfully requested.

## B. Injunctive relief

TruLife contends that it has not sold any of the infringing TruLife boots since mid-2019. *See* Exh. A. But the TruLife boot is still being listed for sale online. *See* Perez-Price Decl. ¶ 7, Ex. D. And in any event, an injunction ensuring that TruLife does not continue (or restart) infringing BMI's patent rights is warranted.

A permanent injunction is equitable in this case because BMI has suffered irreparable injury, legal remedies such as monetary damages are inadequate to compensate for that injury, the balance of hardships favors issuing a permanent injunction against TruLife, and the public interest would be served by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Complaint plainly states that BMI has suffered irreparable injury, and that legal remedies such as monetary damages are inadequate to compensate for that injury. [Doc #1, ¶¶ 23, 30]. These facts are therefore admitted by TruLife upon entry of default. *See Zen Design Group, Ltd. V. Clint,* 2009 WL 4050247 at *4-5 (E.D. Mich., Nov. 23, 2009); *see also, Ford Motor*, 441 F.Supp.2d at 848.

Prohibiting TruLife from committing future acts of patent infringement will not place any hardship on TruLife; but allowing TruLife to continue (or restart) such acts will necessarily continue to harm BMI. *See Windsurfing Int'l, Inc. v. AMF, Inc.,* 782 F.2d 995, 1003 n. 12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against

continuing infringement destroys the business so elected."). Moreover, the public interest will be served by protecting BMI's exclusive rights in its patents. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 647 (Fed. Cir. 2015). Thus, a permanent injunction prohibiting TruLife from infringing BMI's patent rights is warranted.

### C. Attorney fees

As alleged in the Complaint and discussed above, TruLife's patent infringement was willful and the bad-faith infringement here is exceptional. This warrants an award of reasonable attorney's fees to BMI pursuant to 35 U.S.C. §§ 284, 285. *See Coach, Inc. v. Chouman's Ass'n*, 2012 WL 6705412 at *4 (E.D. Mich. Dec. 26, 2012) (upon default, allegations in complaint that defendant acted willfully were sufficient to deem defendant as having admitted the willful acts of infringement alleged in the complaint and to award attorney's fees to plaintiff) (*citing Ford Motor*, 441 F.Supp.2d at 846); *see also, FENF, LLC*, 2018 WL 3729073 at *3-4 (E.D. Mich., Aug. 6, 2018) (same).

### D. Costs

According to Fed. R. Civ. P. 54(d)(1), "Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Nothing provides otherwise, and costs should be

awarded to BMI as well. *See FENF, LLC*, 2018 WL 3729073 at *4 (E.D. Mich., Aug. 6, 2018) (awarding costs in a patent case upon entry of default judgment).

## V.    CONCLUSION

In view of the foregoing, BMI requests entry of default and judgment by default against Defendant TruLife.

### A. Damages requested

BMI requests $738,706.32 in damages ($226,362 in lost profits on 2,434 boots, plus $19,873.44 in reasonable royalty on 666 boots, with the sum trebled for willfulness), or the maximum amount allowed by law. Trebled damages are appropriate and respectfully requested due to TruLife's egregious and willful infringement.

### B. Injunction requested

A permanent injunction is requested, and a proposed permanent injunction is attached hereto as Exhibit C (with a copy being concurrently being filed through the Court's ECF Proposed Order Utility).

### C. Attorney's fees requested

An award of attorney's fees to BMI in an amount of $21,036 is requested. Poplin Decl. ¶¶ 4-15, Ex. A-D.

**D. Costs requested**

An award of costs to BMI in an amount of $429.44 is requested. Poplin Decl.

¶ 16, Ex. E (Bill of Costs and corresponding receipts).

Dated: May 29, 2020        Respectfully submitted,

By:

A. Justin Poplin (KS21598)
Avant Law Group, LLC
12980 Metcalf, Ste. 180
Overland Park, Kansas 66213
Telephone: 913-303-3841
JPoplin@Avant.Law

Larry J. Saylor (P28165)
Miller, Canfield, Paddock & Stone P.L.C.
150 West Jefferson Avenue, Ste. 2500
Detroit, Michigan 48226
Telephone: 313-496-7986
saylor@MillerCanfield.com